Charles Richard SHACK, on behalf of himself and all others similarly situated, Plaintiff-Appellant,

v.

Charles H. SOUTHWORTH, Sheriff of Jackson County, Michigan, Individually and in his official capacity, and Jackson County, Defendants-Appellees.

No. 74–1823.

United States Court of Appeals, Sixth Circuit.

July 28, 1975.

H. Rhett Pinsky, Pinsky & Soet, Grand Rapids, Mich., for plaintiff-appellant.

Bruce A. Barton, Pros. Atty., Jackson, Mich., Robert E. Biewend, Chief Asst. Pros. Atty., James M. Justin, Asst. Pros. Atty., for defendants-appellees.

Before CELEBREZZE, McCREE and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

In this action declaratory and injunctive relief, together with damages, were sought for alleged racial discrimination by the defendant in hiring deputy sheriffs. The appellant sued on his own behalf and sought also to proceed as representative of a class including black applicants for deputy sheriff positions and black persons who would have applied except for the reputation of the sheriff department of Jackson County for not hiring black persons for such jobs. After a trial before the court, the District Judge filed an opinion including findings of fact and conclusions of law and entered judgment for the defendant. An intervening plaintiff, John E. Wallace, did not appeal dismissal of his complaint.

■ The facts of the case are fully set forth in the opinion of the district court. *Shack et al. v. Southworth*, (E.D.Mich. 1975). The findings of fact are supported by substantial evidence and are not clearly erroneous. Rule 52(a), Fed.R. Civ.P. On appeal, we must determine whether the district court erred, as contended by appellant, in concluding that no violation of rights guaranteed by the Thirteenth and Fourteenth Amendments and 42 U.S.C. §§ 1981 and 1983 was proven. Believing as we do that the district court reached the correct legal conclusions on the record before it, we affirm.

■ It is claimed that the sheriff practiced discrimination in two respects. The first method of discrimination is alleged to result from the practice of preferring applicants for deputy jobs who have been policemen in one of the townships of Jackson County, and of exempting them from testing and interview procedures required of other applicants. The defendant admitted that he gave preference to township police officers in hiring deputies. In December 1972 an authorization was received to add eight deputies, and six were chosen from the applications of township police officers before any other applications were considered. The plaintiff Shack was an applicant for one of the eight new jobs and claims he was discriminated against by the admitted preference given to township police officers. Since all the township police officers of Jackson County were white it is contended that the preference resulted in excluding black candidates and is thus discriminatory. However, the district court found that less than one percent of the population of the townships was black, and there was no showing that discrimination played any part in the all-white make-up of the township police forces. Thus, the preference accorded township officers was not shown to result in the perpetuation or carrying forward of past discriminatory practices. This case is unlike *United States v. Sheet Metal Workers, Local 36*, 416 F.2d 123 (8th Cir. 1969), and *Local 53, Heat & Frost Insulators v. Vogler*, 407 F.2d 1047 (5th Cir. 1969), where the defendant unions were found to have engaged in racial discrimination in the past, and current practices which were held invalid had the effect of denying membership to minorities because they were designed to perpetuate this discrimination.

The defendant testified concerning the reasons for his practice of giving preference to applicants from the township police forces. These reasons included the fact that these applicants had successfully completed a mandatory course of at least seven weeks of classroom work in law enforcement. Furthermore, they were known to have performed satisfactorily on the job. He testified that his office was involved closely with the township police and that he had an opportunity to observe the officers in the performance of their duties. He had a "pool" of applicants who were township officers and who were interested in law

enforcement careers. When he had vacancies, he hired from this pool without requiring written examinations, interviews with an "oral board" of sheriff department officers or extensive background investigations.

The district court found that a rational relationship existed for the preference given to township officers. The appellant contends that the Equal Protection Clause requires a compelling interest, or at least something more than a rational relationship between the preference and the job to be performed by deputy sheriffs to justify the practice. The cases relied upon by appellant do not support his position. In *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the Supreme Court stated, "If an employment practice which operates to exclude Negroes cannot be shown to be related to job performance, the practice is prohibited." 401 U.S. at 431, 91 S.Ct. at 853. The Court then found that the criteria upon which the defendant in that case relied had no demonstrable relationship to success on the job. In the present case, the district court relied upon uncontradicted testimony that the preference accorded township police officers was based on proven performance of police work and prior completion of a course of study in law enforcement.

In *Bridgeport Guardians, Inc. v. Bridgeport Civil Service Commission*, 354 F.Supp. 778, 788 (D.Conn.), *aff'd in part, rev'd in part*, 482 F.2d 1333, 1337 (2d Cir. 1973), the district court first found a "disparity of sufficient magnitude" in the numbers of Negroes and Puerto Ricans hired as compared with members of the majority race to impose upon the defendant the burden of justifying use of a particular examination. In this context the court spoke of a standard somewhere between compelling interest and rational relationship. The rule with respect to choice of standards is stated in *Castro v. Beecher*, 459 F.2d 725 (1st Cir. 1972), in the following language:

## Burden of Proof

In the general course, a court faced with a claimed denial of equal protection must first ascertain whether the plaintiff, has made such a threshold showing as to require a justification, must then identify the classification employed, and must finally determine whether the classification has been justified under governing standards. In pursuing an inquiry as to the relationship between each requirement and successful performance on the job, a court might adopt a relaxed standard of review whereby it would be a sufficient justification that under some reasonable version of the facts the classification is rationally related to a permissible goal, here the selection of qualified persons for public employment. *Cf. McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1960). Such a justification is clearly adequate where the initial showing is simply that a plaintiff or class of plaintiffs has been excluded from employment by the classification.

As to classifications which have been shown to have a racially discriminatory impact, more is required by way of justification. The public employer must, we think, in order to justify the use of a means of selection shown to have a racially disproportionate impact, demonstrate that the means is in fact substantially related to job performance. It may not, to state the matter another way, rely on any reasonable version of the facts, but must come forward with convincing facts establishing a fit between the qualification and the job. *Id.* at 732.

While there were no black deputies at the time appellant applied, the sketchy proof in the case showed that there had been black deputies in the past. At one time when the total force was small there had been two black deputies. The appellant did not make the "threshold showing" of a racially discriminatory impact which would have required the appellee to have demonstrated more than a

rational relationship between the preference and successful performance on the job.

■ The other charge of discrimination relates to the method by which the remaining two deputies were chosen in the December 1972 expansion of the sheriff department. Appellant applied for one of eight new jobs and was one of five applicants chosen for a final test and interview out of more than seventy applications which were "screened." He scored highest of the five on the written test, but was placed third by the oral examination board which interviewed all five applicants on December 28, 1972. A member of the board testified that each member asked the candidates questions designed to satisfy that member's particular area of concern. The purpose of the interviews was to determine how the person being interviewed would relate to other officers and the public and how he would react to given situations. After all interviews—15 to 30 minutes each— were concluded, the board members ranked the candidates without prior discussion. This was done by assigning each person interviewed a number (1, 2, 3, 4 or 5) on a paper ballot. Upon tabulation of the ballots it was found that the board members were unanimous in the 1st, 4th and 5th choices, and that the person ranked second received four votes for that position and one for third place while appellant received four votes for third and one for second place.

Because of their near unanimity the members then discussed their vote. It was agreed that although appellant was as qualified as any of the candidates he had no real interest in working for the sheriff department. He preferred to work as a Jackson City policeman, but was ineligible at the time, and applied for the deputy job because he was getting married and needed a full-time job. Appellant testified to this same effect and stated that he would have preferred a city job if he had been eligible. The defendant admitted that the recommendations of the oral board, which he followed without question, were based on subjective judgments.

Appellant was the only black applicant among the more than seventy "screened" by the County or the sheriff department. He was chosen to be one of the five "finalists." In his testimony he pointed to the oral board as the place where the alleged racial discrimination occurred. He was notified by the defendant that he ranked third of the five applicants and that he would be hired when the next vacancy occurred. A deputy resigned on February 18, 1973, and appellant was hired on February 21, 1973, the day this suit was filed. In his pretrial deposition, appellant stated that he did not know of any qualified black applicant for a deputy job who had been denied employment. He knew one Negro and one Mexican who wanted to be policemen, but had not applied because they "felt [they] wouldn't be hired" or that "[the chances] of being hired were slim." He could name no member of the class he sought to represent nor did he know of any other black person who would be entitled to back pay if a class action were permitted. He sought damages of $682.40 for the period between December 28, 1972 when he "should have been hired" and February 21, 1973 when he was employed.

The evidence presented by appellant does not compel a finding that he was denied employment as a deputy sheriff on December 28, 1972 because of his race or color. An N.A.A.C.P. representative on a county committee to promote hiring of members of minority races for public jobs testified that defendant was willing to hire black applicants "if we would send him qualified people." The committee sent no candidates to the sheriff department for its December 1972 expansion hiring. This witness was not familiar with the reputation of the sheriff office as an equal opportunity employer. Another witness who was active in civil rights affairs testified that the office had a poor reputation for hiring black persons. Yet this witness was not aware

that at one time there were two black deputies when the total force numbered about 30.

In dealing with this issue appellant relies on a number of cases which reached a result contrary to that reached by the district court in this case. See, e. g., *Castro* and *Bridgeport, supra; United States v. Georgia Power Co.,* 474 F.2d 906 (5th Cir. 1973); *Brito v. Zia Co.,* 478 F.2d 1200 (10 Cir. 1973); *Carter v. Gallagher,* 452 F.2d 315 (8th Cir.), *cert. denied,* 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972); *United States v. IBEW, Local 38,* 428 F.2d 144 (6th Cir.), *cert. denied,* 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 248 (1970). The present case differs from each of these cases in one important respect. In the cited cases, the plaintiffs produced statistical evidence which established a *prima facie* case of racial discrimination. No such showing was made here, as appellant conceded in his reply brief. Further, the appellant could identify no qualified black applicants who had been denied employment as a deputy sheriff. The district court had no evidence of racial discrimination in the hiring practices of the defendant except appellant's testimony that he felt his qualifications were equal or superior to those of the two applicants who were ranked ahead of him. Both defendant and a member of the board which rated him testified that appellant was not ranked higher because of his "attitude." This was explained as his lack of desire to be a deputy and his lack of interest in doing "security" work rather than "road" work. It was further testified that no one may be assigned to road work until he has completed the seven-week required course of study.

In *Afro American Patrolmen's League v. Duck,* 503 F.2d 294 (6th Cir. 1974), this court upheld a district court finding of discrimination in hiring and promoting in the Toledo Police Department. In that case past discrimination was admitted and the only issue was whether facially neutral criteria of the present had, the effect of perpetuating such past discrimination. We held that they did and

directed that different criteria be employed. The distinction between that case and the present one is that there has been no finding of past discrimination either in the hiring practices of the Jackson County Sheriff Department or the township police departments.

This is not a case where a qualified black applicant was rejected and the position kept open while the employer sought other applicants. When these things are proven, a plaintiff has made out a *prima facie* case and the burden shifts to the employer to explain satisfactorily the rejection. See *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The essential element that is missing from this case is evidence, either statistical or testimonial, which compels the inference that appellant's rejection on December 28, 1972 was racially motivated. The District Judge who saw and heard the witnesses drew no such inference from the evidence, and we are unable to say that this was error.

■ We feel constrained to comment on the selection procedures employed by defendant. The use of non-validated tests with no established passing grade and reliance on the subjective judgments of an oral examination board following an unstructured interview could not be approved in a situation where racial discrimination in hiring has been shown to exist. In *United States v. Sheet Metal Workers, Local 36,* 416 F.2d 123, 136 (8th Cir. 1969), the court held that "[a]s long as the examinations are partially subjective in nature and graded 'pass' or 'fail,' with no established standard for either grade, there is no practical way in which the judgment of the examiner can be reviewed." This holding was preceded, however, by a finding that racial discrimination had been practiced by the defendant union in the past and that the evidence required the inference of continued discrimination to be made. *Id.* at 127. In *Brito v. Zia Co., supra,* 478 F.2d 1200 (10th Cir. 1973), the court held that it could be inferred from statistical evidence that a largely subjective evalua-

tion of job performance was used with intent to discriminate. The statistics showed that a greater proportion of Spanish workers than "Anglo" employees were eliminated by the process. If other evidence in this case had demonstrated the existence of racial discrimination in hiring deputies, or compelled the inference of such discrimination, a change to more objective selection procedures would be required.

The appellant also contends that defendant's recruitment practices were discriminatory. We find no error in the analysis or disposition of this claim by the district court. Nor do we find error in the refusal to certify a class action. The evidence clearly refutes the existence of a class "so numerous that joinder of all members is impracticable," which is the first prerequisite for a class action. Rule 23(a)(1), Fed.R.Civ.P.

The judgment of the district court is affirmed. Costs to the appellee.

McCREE, Circuit Judge (dissenting).

I respectfully dissent. The majority opinion states: "This is not a case where a qualified black applicant was rejected and the position kept open while the employer sought other applicants. When these things are proven, a plaintiff has made out a prima facie case and the burden shifts to the employer to explain satisfactorily the rejection [*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)]."

*McDonnell Douglas* requires a Title VII complainant to carry the initial burden of establishing a prima facie case of racial discrimination. "This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802, 93 S.Ct. at 1824. The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.*

It was conceded by appellees that appellant was as well qualified as any of the other candidates. Yet another candidate, not a member of a racial minority, was chosen for the deputy sheriff opening. I believe that these facts constitute a prima facie case of racial discrimination under *McDonnell Douglas.* Because the district judge did not evaluate appellee's asserted justification for failing to hire appellant—appellant's lack of interest in the sheriff's department—in rebuttal of appellant's prima facie case, I would reverse and remand the case for consideration in light of *McDonnell Douglas.*