**Kazuhito BACON, Plaintiff,**

v.

**SECRETARY OF the AIR FORCE, Defendant.**

No. C2–87–1318.

United States District Court, S.D. Ohio, E.D.

Dec. 4, 1991.

Daniel P. Jones, Columbus, Ohio, for plaintiff.

Joseph E. Kane, Asst. U.S. Atty., for defendant.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court upon Objections to the October 8, 1991 Report and Recommendation of the Special Master.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 53(e)(2) provides in pertinent part:

(2) **In Non–Jury Actions.** In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt the report or may modify it or may reject in whole or in part or may receive further evidence or may recommit it with the instructions.

The Court of Appeals for the Sixth Circuit has recently held that, "when a district court is presented with objections to the report of a special master, the objector has a right to a hearing." *Kieffer v. Sears, Roebuck & Company*, 873 F.2d 954, 956 (6th Cir.1989). Accordingly, this Court finds that upon objection to the report of a Special Master an oral hearing must be conducted here.

The "clearly erroneous" standard has been defined as follows:

A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. The question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw. Rather, the test is whether there is evidence in the record to support the (Special Master's) finding, and whether (his) construction of that evidence is a reasonable one.

*Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985), U.S. *cert. denied* in 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 318 (1986).

The Special Master issued his report on October 8, 1991 recommending that judgment be entered for defendant United States Air Force. On October 15, 1991, plaintiff Bacon filed his Objections to the

Special Master's Report and Recommendation. Shortly thereafter, Defendant United States Air Force Responses to Plaintiff's Objections to Magistrate's Report and Recommendation were filed. An oral hearing was conducted on November 26, 1991 to consider these objections.

## CONCLUSION

 Plaintiff Bacon, being afforded an opportunity to be heard by the Court, argued that the Special Master either did not consider all facts, or, alternatively, misapplied the facts in making his Report and Recommendation. The Court has examined each allegation and finds that they are without foundation. The facts as presented by Plaintiff Bacon before this Court do not differ from those considered by the Special Master. While the Court acknowledges that Plaintiff Bacon's view of the facts differs from that of the Defendant and the Special Master, this distinction is not sufficient for this Court to find contrary to the Special Master.

Upon a thorough review of the record, briefs, objections and matters addressed during the oral hearing, the Court finds no clear error on the part of the Special Master's finding of fact. Further, this Court is in full agreement of the Special Master's Conclusions of Law in the instant matter.

Accordingly, the Court ADOPTS the Report and Recommendation of the Special Master in its entirety.

IT IS SO ORDERED.

## SPECIAL MASTER'S REPORT

### Oct. 8, 1991.

MARK R. ABEL, United States Magistrate Judge.

Plaintiff Kazuhito Bacon brings this action under 42 U.S.C. § 2000e–16(c) alleging that in May 1986 the United States Air Force denied him employment because of his race and national origin and in retaliation for his having filed a charge of discrimination against a previous employer. By an Order of August 14, 1991 Judge George C. Smith referred this case to me as a special master. Trial was held September 10 and 11, 1991.

## FINDINGS OF FACT

Plaintiff Kazuhito Bacon is 37 years old. He was born in Ehata Fukuoka, Japan. His father is a black American, his mother Japanese. Mr. Bacon has attended Wright State University, Sinclair College, and Central State University. He has a total of 138 quarter hours of college credits. His academic emphasis has been in organic chemistry and biology.

Mr. Bacon has held only one job where he used his academic training. From August 1980 to March 1981, he was employed by the Mead Corporation in Miamisburg, Ohio as a Research Technician II. While so employed, he filed a charge of racial discrimination against Mead. Then Mead discharged him. Mr. Bacon filed suit in the United States District Court in Dayton alleging that Mead discriminated against him because of his race and national origin and discharged him in retaliation for filing the charge of discrimination. Mr. Bacon and the Mead Corporation later settled the lawsuit. The terms of that settlement are confidential.

In 1981, after his employment with Mead terminated, Mr. Bacon worked for 3 weeks as a produce clerk for Metro Stores. Mr. Bacon voluntarily terminated that employment because he felt his job duties were other than those represented to him when he was hired. The same year he was hired by United Parcel Service and completed a one-day orientation. He was told to go home, they would call him with the first days' work schedule. However, they never scheduled him to work.

From 1982 until 1986, Mr. Bacon worked for Crown Temporaries. His longest employment with Crown was 90 days[1] he worked at Monsanto bagging herbicides. Since 1986 Mr. Bacon has always looked for work, but he has not been employed. He has not filed federal income tax returns, because he has had no income.

1. Ninety days was the maximum term of employment when working as a temporary.

In early 1986 the Physical Science Laboratory at the Newark Air Force Station sent a Standard Form 52 to the facility's Personnel Office requesting assistance in hiring Physical Science Technicians. Since it is not easy to find qualified applicants for that position in the Newark area, the Personnel Office sent a request February 19, 1986 to the Office of Personnel Management, Dayton Area Office (hereinafter "OPM") that it post the position and forward a certification list of qualified applicants. Joint Exh. 3. OPM posted a notice for the competitive position Physical Science Technician, GS–1311–05 (hereinafter "GS–5 position") with an opening date of March 3 and a closing date of March 7, 1986. Joint Exh. 1.

Plaintiff Bacon filed an application March 3, 1986 on form SF 171. Joint Exh. 2. OPM determined that Mr. Bacon and Cindy L. Garcia were the only qualified applicants for the position, so it placed them on the certification list and sent the list to the Newark Air Force Station.

The Physical Science Laboratory was contemporaneously seeking to fill four Physical Science Technician, GS–1311–07 positions (hereinafter "GS–7 positions"). Ms. Garcia was on a certification list for one of the GS–7 positions, and sometime in May 1986 she was tentatively selected for a GS–7 position.[2] Joint Exh. 8. That meant that Mr. Bacon was the sole remaining qualified applicant on the GS–5 position certification list.

Mrs. Candice Wright, a Personnel Staffing Specialist in the Personnel Office of the Newark Air Force Station, handled the requests to OPM for certification lists and all other personnel matters related to filling the Physical Science Technician positions. She testified that Robert Swope, the Supervising Chemist of the Physical Science Laboratory and the person making the hiring decisions, did not want to select from a certification list of one for the GS–5 position. So she requested a supplemental certification from OPM March 26, 1986. On April 30, 1986 OPM issued a supplemental

certification list adding Timothy D. Rian and Scott N. Bergreen.

When a federal agency hires from a competitive certification list through OPM and the agency wants to hire from the list, it must chose from the top three qualified applicants. OPM ranks the applicants by scores based on their education, work experience and other factors related to the position description qualifications. Veterans are given a preference. A preference eligible veteran has 5 points added to his score.

Mr. Bacon was a preference eligible veteran. His score for the Physical Science Technician, GS–5 position was 85. Mr. Rian and Mr. Bergreen were not preference eligible veterans. Both scored 80. Under the veterans preference laws, the hiring agency cannot hire a non-veteran on the certification list if a preference eligible veteran has an equal or greater score. Since Mr. Bacon was a preference eligible veteran and had a higher score than the other two non-veterans on the list, the only person the Physical Science Laboratory could hire from the Physical Science Technician, GS–5 certification list was plaintiff.

The Physical Science Laboratory Supervising Chemist Robert Swope interviewed the applicants for the Physical Science Technician GS–5 and GS–7 positions. Although the testimony and exhibits do not clearly establish the dates of the GS–7 interviews and the date(s) Mr. Swope's made a final decision on filling those four positions, it appears that the interviews were held at approximately the same time he interviewed Mr. Bacon for the GS–5 position and that he made a final decision to fill the GS–7 positions at about the same time he decided not to hire plaintiff.

On May 16, 1986, Mrs. Wright sent Mr. Bacon an Optional Form 5, Inquiry As To Availability, inviting him to appear for an interview. Mr. Bacon contacted the Personnel Office and arranged to come to the Newark Air Force Station for an interview May 20, 1986. Mr. Bacon drove the 110 miles between his home and the Newark

---

**2.** Ms. Garcia was on yet another certification list for a GS–7 position which was issued April

30, 1986. She was not selected from that list. Joint Exh. 6.

Air Force Station, arriving 20 minutes early for the interview.

Robert Swope conducted the interview in a small room adjacent to the Personnel Office. The interview did not go well. Mr. Bacon thought Mr. Swope was rude, non-communicative, and non-responsive to his questions. Mr. Swope felt the interview was strained. He believed Mr. Bacon lacked eye contact, spoke too softly, and communicated poorly. Mr. Swope felt he had to pull the answers to his questions out of plaintiff.

Mr. Bacon testified that Mr. Swope walked into the interview room and nodded hello. Although plaintiff got up to shake his hand, Mr. Swope ignored him and sat down. Twice during the interview, Mr. Swope got up and left the room without explanation. He did not apologize or explain his absences when he returned.

The interview lasted fifteen minutes, twenty-five including the two five minute absences. Most of Mr. Swope's questions were about plaintiff's employment with the Mead Corporation, which was Mr. Bacon's only relevant prior similar employment. Mr. Bacon was uncomfortable talking about the details of his work at Mead because his settlement agreement with Mead forbade him to disclose proprietary information.

Page 5 of plaintiff's employment application (SF 171), block 47 set out the following information about his discharge from Mead:

I was racially harassed at Mead Digital Systems and I filed charges of racial discrimination on the 12 Feb 81 with the Federal Equal Employment and Opportunity Commission. I was fired on 27 Mar 81 in retaliation for filing such charges with the EEOC. On the 10 Jul 81, the Board of Review for the State of Ohio Unemployment Compensation ruled in my favor that there was evidence of dis-

crimination. And on the 30 May 84, I received an out of court settlement.

It was a Federal agency that aided me. It was a Federal law that protected my rights. I have had extreme difficulty in finding employment since my firing from Mead. I am not telling you to give me a job but I am asking you to accord me the same opportunity for Federal employment as is everyone else and in compliance with Federal law.

Mr. Swope had read plaintiff's SF 171, including the information he typed into block 47, prior to the interview. When Mr. Swope left the interview room the second time, Mr. Bacon looked at his SF 171 laying on Mr. Swope's desk and saw that it was turned to page 5.

Toward the end of the interview, Mr. Swope looked down at the employment application and appeared to read from it. Then, looking dead at Mr. Bacon, he said with emphasis (grit in his voice): You gotta get along. When questioned at trial about this statement by Mr. Swope, Mr. Bacon testified that he likes precision. He said it may rub some people the wrong way. But I get along with people.

Mr. Swope testified that first impressions are very important, and he and Mr. Bacon didn't seem to hit it off very well. Mr. Bacon looked at the walls, the ceiling, the floor, and the table. He only occasionally made eye contact with Mr. Swope. Mr. Bacon's voice was very soft, and as the interview went on Mr. Swope found that they were talking in whispers. Sometimes it was difficult to hear what Mr. Bacon was saying.

Mr. Swope felt Mr. Bacon was very loose and unresponsive in his questions. Plaintiff asked about safety, solvents the facility used, weaponry, and nuclear weapons. Mr. Swope believed Mr. Bacon talked about things irrelevant to the employment interview.

In his testimony, Mr. Bacon denied asking about nuclear weapons.[3] His view was

3. Mrs. Wright testified that Mr. Bacon spoke in a whisper to her, and that he asked what kind of nuclear weapons we had. Mrs. Wright had an overall unfavorable impression of plaintiff. She recalled that Mr. Bacon was dressed oddly,

wearing a bright blue jump suit, tinted yellow glasses, and tennis shoes. Mr. Swope made no reference in his testimony to Mr. Bacon's attire. Mr. Bacon denied wearing a bright blue jumpsuit and said his clothing was appropriate to the

that Mr. Swope was unresponsive to his questions. He said that he asked what the function of the facility was, and Mr. Swope replied that they worked on satellites. Plaintiff asked what they did on satellites, and Mr. Swope did not respond. He asked if they worked with private contractors, and again Mr. Swope did not respond.

Mr. Bacon testified that he also asked about job security. Mr. Swope replied that there had been budget cuts but that they had money now. Plaintiff asked about job safety. Was there a possibility of exposure to radiation or chemicals. Was the ventilation system able to exhaust the beryllium dust Mr. Swope questioned him about.[4] Mr. Bacon also asked Mr. Swope for a tour of the facility, but Swope ignored him.[5]

Mr. Swope's impressions of Mr. Bacon were that he was not very assertive, that he didn't have a lot of initiative. Mr. Bacon would have trouble conversing with people, defending a position. He is not a people person.

Mr. Bacon testified that the interview ended when Mr. Swope walked out of the room without saying anything. He did not shake Mr. Bacon's hand. Nor did he ask Mr. Bacon, Why should I hire you?[6]

Mr. Bacon testified that just before he left, he asked Mrs. Wright if that was the way they normally conducted interview. Mrs. Wright shrugged. Plaintiff responded, I guess what's going to happen is going to happen.

After the interview, Mr. Swope told Mrs. Wright that the interview did not go well and he wasn't satisfied with the applicants for the Physical Science Technician, GS–5 position. He believed that Mr. Bacon was not qualified for the position. Mr. Swope wanted an aggressive, assertive person who showed individual initiative. He wanted a people person. Mr. Bacon displayed none of these characteristics during the interview.

Mrs. Wright told Mr. Swope to think about it and let her know later. Several days later, Mr. Swope told Mrs. Wright that he did not want to select plaintiff. Mr. Swope testified that Mr. Bacon's race, his national origin, and his having previously filed a charge of discrimination in employment were not factors in his decision. The other two people on the supplemental certification list were apparently acceptable to Mr. Swope, Joint Exhs. 20 and 21, but he could not consider them because Mr. Bacon was a veteran blocking them. Mrs. Wright agreed to look into whether they could make an objection to Mr. Bacon to unblock the supplemental certification list or whether they had to make a selection off the list.

Mrs. Wright called John McConnel, a Personnel Staffing Specialist with OPM in Dayton, Ohio to see if there was anything they could do to select from the other two applicants on the supplemental certification list. She asked him whether he thought an objection to Mr. Bacon as a veteran blocking based on the interview would be sustained. He replied, Probably not. The Physical Science Technician, GS–5 position was not a meet and greet position involving contact with the public, personnel, or similar people skills. Consequently, it was not likely that an objection would be sustained permitting them to passover a preference eligible veteran. Mr. McConnel recommended that she consider filling the position from another source.

Mr. McConnel testified that a woman from Newark Air Force Station telephoned and said they were returning the certifica-

---

interview. I do not credit Mrs. Wright's testimony that Mr. Bacon wore clothing inappropriate to the interview, but I do accept her testimony that he spoke in a whisper and asked her a question about nuclear weapons.

4. Mr. Swope had asked Mr. Bacon whether he knew the dangers of beryllium dust.

5. Mr. Bacon testified that Mr. Swope treated him as a saboteur or spy. He refused to give him a tour and he refused to answer questions about what they did at the facility.

6. Mr. Swope prepared a list of potential questions for all the Physical Science Technician positions interviewees. Joint Exh. 9. Question number 3 on that list was, Why should I hire you? A marginal note indicated the question should be *"LAST!"* *Id.*

tion lists for the Physical Science Technician, GS–5 position unused. Circumstantial evidence indicates the caller was Mrs. Wright. Mr. McConnel asked why, and Mrs. Wright responded, A veteran is blocking. They had bad vouchers on him. Mr. McConnel took this to mean that they had negative information on Mr. Bacon, probably from contacting a former employer or a reference.

Neither Mr. Swope nor Mrs. Wright vouchered Mr. Bacon, i.e., contacted his former employers or references. Based on the interview, Mr. Swope had decided not to hire Mr. Bacon. They had no need to check the information he supplied on his employment application. Further, it was not their practice to voucher an applicant until the applicant was tentatively selected for the position. Thus, the evidence suggests that when Mrs. Wright referred to "bad vouchers"[7] she meant Mr. Bacon's discharge by the Mead Corporation (and perhaps his filing employment discrimination and retaliation charges against Mead).

A federal governmental agency does not have to hire from a certification list. Mr. McConnel testified that, depending on the circumstances, as many as 50% of the certification lists issued to an agency may be returned unused. The explanation of "veteran blocking" is a sufficient explanation for returning a certification list unused.

There are a number of ways to fill a position. A competitive certification list from OPM is just one. A position may be filled by promotion or transfer. Alternatively, the agency may use a local source of applicants called the applicant supply file. Veterans who qualify under the Veterans Readjustment Act and veterans who have a 30% or greater disability may apply to the Newark Air Force Station directly.

Mrs. Wright advised Mr. Swope to restructure the position to a GS–3. This way he could bring in a trainee and "grow his own." Lowering the grade level would permit them to bring in a veteran, since most preference eligible veterans qualify for a GS–3 position. Mr. Swope agreed. Mrs. Wright noticed the position as Physical Science Technician, GS–3. Mr. Swope selected a white, male applicant who was a veteran with a 30% disability. During the same period, Mr. Swope also filled four Physical Science Technician, GS–7 positions. He selected Charles Green, a white male, Cindy Garcia, a female, Houston Byrd, a black male, and Alfred Wright, a black male with a physical handicap (one of his legs is shorter than the other) for the positions. Joint Exhs. 6 and 8. Since May 1986, the Newark Air Force Station has been downsizing, and Mr. Swope has hired only one more employee—a male of Chinese national origin.

The position description for Physical Science Technician states that the "purpose of this position is to perform tests for the certification of clean rooms and controlled areas for the Product Environment Group of the Physical Science Branch of the Product Quality and Reliability Division." Defendant's Exh. F. Mr. Swope testified that the Physical Science Technician, GS–5's primary duties were to assist the Clean Room Officer in certification of environmentally controlled areas. Newark Air Force Station works on gyros and guidance systems for weapons systems and aircraft. Dust could cause these systems to malfunction. As a result, it is crucial that the work areas be clean, that is, the air is filtered, the humidity controlled, and so on.

The position description states the a Physical Science Technician, GS–5 takes "tests and measurements such as temperature, relative humidity, airborne contamination, air flow velocities, pressure differentials and so on." The GS–5 submits tests for processing and writes up the results. He or she performs tests on "clean room filter banks, laminar flow benches and devices to certify them." The testing is performed in the work areas. The GS–5 must also teach personnel how to use the certification and monitoring equipment. Joint Exh. 1 and Defendant's Exh. F.

---

7. Mrs. Wright denied telling McConnel that she had bad vouchers on plaintiff. Nonetheless, I find that the preponderance of the evidence establishes that she told McConnel that they were returning the certification lists because they had negative information about Mr. Bacon.

Mr. Swope testified that it is mandatory that a Physical Science Technician have good communications skills because she must effectively teach other personnel how to use equipment, must be able to get along with the personnel in the 30–35 controlled areas he regularly visits to conduct testing, to advocate his unit's position at base environmental meetings, and to defend changes required to maintain a clean environment with production supervisors. In Mr. Swope's judgment, he needed a people person to visit other employees in their work areas and effectively perform the job's monitoring and inspection functions.

The position description further states that the job involves compiling and submitting environmental data to Data Automation Branch on appropriate forms. He or she must be prepared to advise the Clean Room Officer if operations need to be suspended because recertification of an environmentally controlled area is in jeopardy. Joint Exh. 1 and Defendant's Exh. F.

The Physical Science Technician GS–5 reviews test methods and procedures used in the environmentally controlled. He tests and recommends approval or disapproval of materials. She "[p]erforms acceptance tests on incoming environmental control equipment...." The GS–5 may also assist others working on improvements to or studies involving clean areas. Joint Exh. 1 and Defendant's Exh. F, p. 2.

Although the Physical Science Technician, GS–5 works under the supervision of the Product Environment Work Group supervisor, she must independently carry out assignments. Judgment and initiative are required. Defendant's Exh. F, p. 2. Mr. Swope noted that the GS–5 had to daily go out and visit the 30–35 clean areas throughout Building 4. That means the GS–5 has a lot of autonomy; and, consequently, Swope

expects him to demonstrate initiative and judgment.

The formal requirements to qualify for competitive certification for the position by OPM are set out in Handbook X–118: Qualification Standards. The applicant must have at least 2 years of general experience and 1 year of specialized experience in a laboratory or field environment. However, four years of post-high school study supplemented by 48 semester hours in physical science, engineering, or a branch of mathematics may be substituted for 2 years of general and one year of specialized experience. Mr. Bacon's educational attainment substituted for his lack of general or specialized experience in a laboratory or field environment. Plaintiff's Exh. 2, pp. 1–2. Handbook X–118 singles out these "abilities and personal characteristics" as "more desirable" for candidates for the Physical Science Technician position:

a. Reasoning ability;
b. Attention to detail;
c. Knowledge of specific scientific principles involved in the given work situation;
d. Manipulative skill;
e. Ability to write reports (at higher grade levels).

Plaintiff's Exh. 2, p. 4. There is no mention of interpersonal skills in the Handbook statement of the qualifications for the position. There is no indication that it is a requirement that a Physical Science Technician be a people person.[8]

Agencies are not required to select employees solely based on their OPM competitive qualification ranking. The agency interviews the top three applicants certified by OPM. The final decision is based on the applicants qualifications (education, employment experience, recommendations, and so on) and their performance during the interview. There is a strong subjective

---

**8.** OPM advises the agencies they serve that the qualification standards in Handbook X–118 "may not be modified without prior OPM approval...." OPM Operations Letter 337–1458 (May 5, 1987), p. 2 at C., 1. Plaintiff's Exh. 3. Newark Air Force Station has never requested a modification of the qualification standards for the Physical Science Technician position.

Further, personality tests are not employed by OPM. An agency is not permitted to use personality tests without prior OPM approval. *Id.,* p. 2 at C., 2. Newark Air Force Station has never sought OPM approval to employ personality tests.

component to the selection interview. The final selection decision requires an exercise of judgment.

On May 23, 1986 Mrs. Wright wrote Mr. Bacon informing him "that the position of Physical Science Technician, GS–1311–05, for which you were recently considered has been filled by selection of another applicant." While it is true that Mr. Swope decided not to hire Mr. Bacon, it is not true that the GS–5 position had been filled by another applicant. They were in the process of restructuring the position to a GS–3.

Later Mr. Bacon wrote Mrs. Wright a letter asking why he was not selected. She viewed the letter as a request for constructive criticism. Mrs. Wright talked with Mr. Swope and asked him for his impressions. June 4, 1986 Mr. Swope gave her the following handwritten note:

1—Be more positive, assertive, expressive, and energetic in your responses.

2—Show and demonstrate personal confidence and maintain eye contact throughout the interview.

3—Be emphatic with clear, concise answers.

4—Speak louder with belief and trustworthiness in yourself.

Joint Exh. 12. Mr. Swope struck the fourth item by lining through it heavily.

Relying on Mr. Swope's critique, Mrs. Wright responded to Mr. Bacon's letter:

1. As requested in your 28 May 1986 letter, the following points are provided as suggestions for improvement of your interviewing techniques:

a. Be more positive, assertive, and energetic in your responses.

b. Demonstrate personal confidence and maintain eye contact throughout the interview.

c. Be emphatic with clear, concise answers.

2. I hope these comments will be of help and I wish you success in your future job seeking endeavors.

Joint Exh. 15. Mr. Bacon felt Mrs. Wright's letter demonstrated racial bias. He believed that the letter implicitly assumes the racial stereotypes that blacks are lazy, inarticulate, and non-communicative. Mr. Bacon vigorously disagreed with the criticisms in Mrs. Wright's letter. He felt that he showed good communication skills during the interview. Mr. Swope was the one with poor communication skills.

At trial Mr. Bacon made a very good appearance. He was well-dressed. While he testified, Mr. Bacon maintained good eye contact with the questioner. He listened carefully to questions. His answers were concise and responsive. His voice was clearly audible.

Mr. Swope was also appropriately dressed for the courtroom. On direct examination, he was soft spoken and slouched down somewhat in the witness chair. On cross-examination his voice was more forceful and firm. He listened attentively to questions. His answers were responsive. He looked directly at his questioner.

## CONCLUSIONS OF LAW

There are two controverted issues of law in this action:

1. Whether plaintiff was discriminated against based on race or retaliation by Air Force officials; and

2. Whether the reasons articulated by Air Force officials for selecting other applicants, and not the plaintiff, were pretextual.

Final PreTrial Order at 4. The order, allocation, and burden of proof models for discrimination and retaliation claims are similar and are now well established. Plaintiff has the initial burden of establishing a *prima facie* case by establishing, by a preponderance of the evidence, facts which, if not explained, give rise to an inference of unlawful activity on the part of the employer. *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). This burden is not onerous. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

After the plaintiff has established a *prima facie* case of disparate treatment, the

burden of production then shifts to the defendant to articulate some legitimate non-discriminatory reason for the employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94; *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Wrenn v. Gould*, 808 F.2d 493 (6th Cir.1987). The burden of persuasion, however, remains at all times with the plaintiff. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *Haynes v. Miller*, 669 F.2d 1125, 1126–27 (6th Cir.1982). Accordingly, once the employer meets its burden of going forward, the burden then shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that defendant's articulated reason for the adverse action was mere pretext. *Burdine*, 450 U.S. at 254–56, 101 S.Ct. at 1094–95; *McDonnell–Douglas Corp. v. Green*, 411 U.S. at 804, 93 S.Ct. at 1825; *Wrenn*, 808 F.2d at 501; *Henry v. Lennox Inds.*, 768 F.2d 746 (6th Cir.1985); *Grano v. Department of Development of the City of Columbus*, 637 F.2d 1073 *aff'd following remand* 699 F.2d 836, 837 (6th Cir.1983).

■ When there is no direct evidence of discrimination, plaintiff bears the initial burden of establishing a *prima facia* case of discrimination. *McDonnell–Douglas Corp. v. Green*, 411 U.S. at 802, 93 S.Ct. at 1824. In order to establish a *prima facia* case of racial discrimination, the plaintiff must establish facts to show that:

(1) plaintiff belonged to a protected class;

(2) plaintiff applied and was qualified for a job for which the employer sought applicants;

(3) despite proper qualifications, plaintiff was rejected; and

(4) after rejection, the position remained open and the employer continued to seek applications from persons of complainant's qualification.

9. Mr. Bacon was born an American citizen. However, his father is a black American and his

*Id.* Here, there is no question that plaintiff is a member of a protected class. He is a black of Japanese national origin.[9] *See* 42 U.S.C. § 2000e–2(a)(1). Further, plaintiff submitted sufficient evidence to demonstrate that he was qualified for the position of Physical Science Technician GS–5 and that after rejecting his employment application, defendant continued to seek applicants for that position. Therefore, I conclude, as did Judge Smith in his May 2, 1990 Opinion and Order, that the evidence establishes a *prima facia* case of racial discrimination.

■ Section 704(a) of the Civil Rights Act of 1964 provides that:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

The provisions of Title VII are binding on the Air Force, even though it is a federal agency. *See, e.g., Douglas v. Hampton*, 512 F.2d 976 (D.C.Cir.1975); *DeMedina v. Reinhardt*, 444 F.Supp. 573 (D.C.D.C.1978); *Williams v. Tennessee Valley Authority*, 415 F.Supp. 454 (D.C.Tenn.1976), *aff'd in part and vacated in part on other grounds*, 552 F.2d 691 (1977).

■ Title VII clearly prohibits an employer from retaliating against an employee who has availed himself of his rights under this statute. *See McDonnell–Douglas Corp. v. Green*, 411 U.S. at 796, 93 S.Ct. at 1821; *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, *aff'd following remand*, 783 F.2d 50 (6th Cir.1986). In order to establish a *prima facia* case of retaliation, plaintiff must prove:

(1) that he engaged in an activity protected by Title VII;

(2) that he was subject to adverse employment action; and

mother Japanese. See page 1257, above.

(3) that there was a causal link between the protected activity and the adverse action of the employer.

*Cooper v. City of North Olmsted,* 795 F.2d 1265, 1271 (6th Cir.1986).

█ It is uncontroverted that plaintiff filed discrimination charges against his former employer, Mead Digital Systems, and that defendant knew of this when it interviewed plaintiff for the position. The filing of a charge of discriminatory employment practice is a protected right under § 704(a) and conduct infringing that right constitutes a violation of that section. *Barela v. United Nuclear Corp.,* 462 F.2d 149 (10th Cir.1972). Further, it is uncontroverted that plaintiff was not hired. Thus, plaintiff has met the first and second elements of his *prima facia* case.

Whether or not plaintiff established the third and final element of a *prima facia* case of retaliation is a closer question. Mr. Bacon must show a causal link between the protected activity and the adverse action of the employer. When retaliation for asserting equal employment rights under Title VII played a part in the employer's adverse job action, even if the retaliation was not the sole reason, the employer's action violates Title VII. *Goodwin v. City of Pittsburg,* 480 F.Supp. 627 (W.D.Pa.1979), *aff'd* 624 F.2d 1090 (3d Cir.1980). The evidence shows that Newark Air Force Station informed Mr. McConnel that they were returning the certificate with plaintiff's name unused because they had negative information about Mr. Bacon. See page 1260, above, at n. 6. Most of Mr. Swope's questions necessarily concerned plaintiff's previous employment with Mead, which was Bacon's only similar employment. Toward the end of the interview, plaintiff testified that Mr. Swope looked down at the employment application and appeared to read from it. Then looking at Mr. Bacon, he said with emphasis: You gotta get along. See page 1259, above. This evidence is sufficient to satisfy the third element of plaintiff's *prima facia* case of retaliation.

In light of the preceding discussion, I hold that plaintiff has met his initial burden on both the discrimination and the retaliation charges, thereby shifting the burden of production to the Air Force.

█ In order to satisfy its burden of production, Air Force must show that it had legitimate non-discriminatory and non-retaliatory reasons for not hiring the plaintiff. *McDonnell–Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824; *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. Because the proof in this regard is the same for both the discrimination and the retaliation charges, they may be evaluated together. The question presented by defendant's defense is whether poor performance in an interview is a legitimate, non-discriminatory ground for rejecting a job applicant. The personal interview is clearly one of the most important parts of the application process. Frequently the best interviewee will be hired from among a slate of equally qualified candidates. There are legitimate reasons why this is so. The supervisor must work with the new hire on a daily basis. Consequently, employers want to hire someone they think they will be able to work with. Agencies are not required to select employees solely on their OPM competitive qualification ranking. There is a strong subjective component to the selection interview and the final selection decision requires an exercise of judgment. See page 1262, above. An employer's mistaken but honestly held belief that a job applicant lacks the requisite qualities for the position satisfies the burden of production. *Grano v. Dept. of Development, supra,* 699 F.2d at 837–38.

Mr. Swope believed Mr. Bacon lacked eye contact, spoke too softly, and communicated poorly. He felt that the position of Physical Science Technician required good communication skills to explain laboratory procedures and educate other personnel regarding environmental testing and control. Additionally, Mr. Swope testified that Mr. Bacon was very loose and unresponsive in his questions. Mr. Swope also felt that Bacon asked inappropriate questions regarding nuclear materials at the station. See pages 1258–1260 and 1262, above.

Undeniably, the factors used by Swope to evaluate the plaintiff were subjective. I observe that the Sixth Circuit "has previously noted the problems inherent in a selection process which rely solely upon the subjective evaluations of all white supervisory personnel." *Rowe v. Cleveland Pneumatic Co.*, 690 F.2d 88, 93 (6th Cir. 1982) (citing *Senter v. General Motors*, 532 F.2d 511 (6th Cir.), *cert. denied* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976)); *Shack v. Southworth*, 521 F.2d 51, 55–56 (6th Cir.1976)). While such assessments do not create a *per se* violation of Title VII, they do provide a ready mechanism for discrimination and are therefore given careful scrutiny where there is a subjective decision being made by a supervisor who is not a member of a protected class. *Royal v. Missouri Highway & Transportation Comm'n*, 655 F.2d 159, 164 (8th Cir.1981). The ultimate issue in each case is whether the subjective criteria were used to hide discriminatory action. *Ramirez v. Hofheinz*, 619 F.2d 442, 446 (5th Cir.1980).

After carefully reviewing all the evidence presented, I cannot say that Mr. Swope based his evaluation of plaintiff on impermissible grounds. Mr. Swope was the direct supervisor familiar with day-to-day operations in the Physical Science Laboratory and the practical aspects of the duties of a Physical Science Technician. He was knowledgeable about the attributes, skills, and personal factors relevant to the Physical Science Technician position. He wanted an aggressive, assertive person who showed individual initiative. Mr. Swope believed the position required a people person. Mr. Bacon displayed none of these characteristics in the interview.

I recognize that being a people person was not listed in the job description as a position requirement or even as a desirable quality for the Physical Science Technician job. Further, OPM policy forbids agencies from modifying position qualifications and from giving personality tests. These are factors I have weighed in determining the credibility of Mr. Swope's testimony that he rejected Mr. Bacon's employment application because of his poor performance during the employment interview and not

because of his race, national origin, or his having filed a charge of employment discrimination against a former employer.

The opinion of a decisionmaker that the applicant was ill-suited for the position may be sufficient to meet the burden of production. *Brooks v. Ashtabula County Welfare Dept.*, 717 F.2d 263, 267–68 (6th Cir. 1983) *cert. denied*, 466 U.S. 907, 104 S.Ct. 1687, 80 L.Ed.2d 160 (1984). Mr. Swope testified that plaintiff's race, national origin, and his having previously filed a charge of racial discrimination in employment were not factors in his decision. See page 1260, above. Buttressing this testimony is the evidence that during the period at issue in this litigation, Mr. Swope was responsible for filing five positions. Two of these positions were filed by racial minorities. Since 1986, Mr. Swope has only hired one more employee—a male of Chinese national origin.

Changing criteria to hire a person not of protected group can constitute discrimination. *Farber v. Massillon Bd. of Education*, 917 F.2d 1391 (6th Cir.1990). Here, the Newark Air Force Base reclassified the Physical Science Technician GS–5 position to a GS–3 so it could avoid hiring plaintiff. See page 1261, above. There is also evidence that Mr. Swope would have been willing to hire either of the two white individuals on the certificate but was prevented from doing so because of Mr. Bacon's veteran status. Nonetheless, the evidence does not demonstrate that Mr. Swope restructured the position so that he could hire a person not of the protected group. Rather, he restructured the position because he had decided not to hire Mr. Bacon and Mr. Bacon was a veteran blocking. I find that plaintiff has failed to demonstrate by a preponderance of the evidence that Mr. Bacon's race, national origin, or his prior charge of discrimination against Mead were factors in Mr. Swope's decision to restructure the job to a GS–3 position.

■ A Title VII trial does not end when the defendant meets its intermediate burden. The plaintiff is provided an opportunity to demonstrate that the proffered rea-

sons for the employment decision were pretextual. Plaintiff can establish this requirement by either showing the reasons offered are not the true reasons or are unworthy of credence. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. It is uncontroverted that plaintiff at least minimally met all objective criteria. The fact that OPM listed Mr. Bacon on the certificate demonstrates he was qualified for the Physical Science Technician position. However, a governmental unit is not required to hire from a certification list. Hiring from an OPM certificate is only one way of staffing a position. See page 1261, above. I conclude by a preponderance of the evidence that Mr. Swope's subjective evaluation of Mr. Bacon for the position was based on his reasonable perception of how Mr. Bacon performed during the interview. He spoke very softly, only occasionally made eye contact, was not responsive to Mr. Swope's questions, and asked questions Mr. Swope found to be only marginally relevant to the interview. See pages 1259 and 1260, above. Mr. Swope concluded that Mr. Bacon failed to demonstrate the qualities of initiative, assertiveness, and ability to get along with people that he believed were necessary to perform the job. See page 1260 above. Moreover, Mr. Bacon's only relevant past work experience was his employment with Mead, and he felt uncomfortable responding to Mr. Swope's questions about that employment because his settlement with Mead prohibited him from disclosing proprietary information about Mead.

It must be remembered that the defendant does not have to prove the absence of discrimination. *Board of Trustees v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 295–96, 58 L.Ed.2d 216 (1978). Here, the Air Force has articulated legitimate reasons for not hiring plaintiff. Plaintiff is required to demonstrate by a preponderance of the evidence that the proffered reasons were mere pretext masking discriminatory conduct. In this task, he has failed.

I cannot say that the Air Force decided not to hire Mr. Bacon because of his race, national origin, or his having previously filed a charge of discrimination against Mead. Plaintiff has failed to carry his burden of persuasion that his non-hire was more likely motivated by discriminatory or retaliatory reasons.

Accordingly, I hereby RECOMMEND that JUDGMENT be entered for defendant.

Any appeal from this Special Master's Report must be taken in accordance with Rule 53(e)(2), Fed.R.Civ.P. and Eastern Division Order No. 91–3, pt. I., E., 3 and F. See, *Kieffer v. Sears, Roebuck & Company,* 873 F.2d 954 (6th Cir.1989). Failure to file a timely objection constitutes a waiver of any objection to the Special Master's Report. E.D. Order No. 91–3, Pt. I., E., 3.